IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-26 E |
| | ) | **HEARING REQUESTED** |
| GEORGE L. EBERLE | ) | |

### DEFENDANT GEORGE L. EBERLE'S[1] OMNIBUS PRETRIAL MOTION

AND NOW, comes the defendant, George L. Eberle, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files the within Omnibus Pretrial Motion and in support thereof sets forth as follows:

Mr. Eberle is charged in a four-count indictment along with his wife, Alesha Eberle. Counts one and two charge Mr. Eberle with conspiring to violate the laws of the United States in violation of Title 18 U.S.C. § 371, and using a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct in violation of Title 18 U.S.C. § 2251(a) respectively. These two counts are based on conduct that is alleged to have occurred in August and September of 2001. Counts three and four charge Mr. Eberle and his wife with knowingly receiving visual depictions of minors engaging in sexually explicit conduct in violation of Title 18 U.S.C. § 2252(a)(2), and possession of material depicting the sexual exploitation of a minor in violation of Title 18 U.S.C. § 2252(a)(4)(B) respectively. The charges of receiving and possessing child pornography stem from a search of the Eberle's computer in March of 2005.

---

[1] Alesha Eberle will be filing a motion to adopt and join in this omnibus pretrial motion. Mr. Eberle has no objection to Mrs. Eberle joining his motion.

I.  Background

The investigation began in August 2004.  In August 2004, Yahoo!, a major internet content provider, contacted the National Center For Missing and Exploited Children (NCMEC) to report suspected child pornography had been posted to a Yahoo site titled http://photos.yahoo.com/glepa2001. NCMEC contacted Lieutenant David C. Peifer of the Delaware County Criminal Investigation Division in Delaware County, Pennsylvania.  Lieutenant Peifer is the head of a task force that investigates internet crimes against children.  Lieutenant Peifer applied for and received a court order from the Court of Common Pleas of Delaware County ordering Yahoo! to provide him with the identity of the individual assigned the e-mail address glepa2001@yahoo.com as well as subscriber information for that individual.

Yahoo!'s response to the court order revealed that the account in question was registered to "Mr. george e" with a date of birth of October 5, 1978, and an address of 404 S. Center Street, Corry, Pennsylvania.  The information from Yahoo! established that the images of suspected child pornography had been uploaded to the http://photos.yahoo.com/glepa2001 site on September 2, 2001.  The information also stated that the account had been deactivated.  Because the address for the user was in Corry, Pennsylvania, the investigation was referred to the Erie County District Attorney's Office.  The case was assigned to Erie County Detective Jessica Lynn.  Detective Lynn contacted the Corry Police and found that the home at 404 S. Center Street had caught fire in January 2004 and had been vacant since.  Officer Kevin Good of the Corry Police Department believed that glepa2001 could be George Eberle, but Officer Good did not know Mr. Eberle's current address. Detective Lynn contacted postal inspectors who were able to determine that Mr. Eberle had a current mailing address of 330 East Main Street, Corry, Pennsylvania and that he was receiving certified

mail from the Erie County Office of Children and Youth at that address.

Detective Lynn then contacted the Office of Children and Youth (OCY) and spoke to Tina Turholski who confirmed that Mr. Eberle lived at the 330 East Main Street address and that he had a computer with a web cam. Detective Lynn began preparing a search warrant for Mr. Eberle's computer, however, the next day she was contacted by Ms. Turholski of OCY who stated that she had just made a home visit to Mr. Eberle's home and that the computer was gone. Ms. Turholski reported that Mr. Eberle said the computer had been confiscated by the House of Television Rental in Corry, Pennsylvania, because Mr. Eberle had failed to stay current with his payments for renting the computer.

Detective Lynn contacted the House of Television and was informed that Mr. Eberle had possession of the computer from January 21, 2004, through August 20, 2004, when the computer was taken from Mr. Eberle by the House of Television due to Mr. Eberle's failure to pay the monthly rental fee. The manager at the business told Detective Lynn that the computer had been re-rented. Detective Lynn told the manager to get the computer back and keep it while she obtained a search warrant.

Detective Lynn prepared an application for a search warrant authorizing the seizure from the House of Television the computer which had been rented by Mr. Eberle and a search of that computer. The search warrant and the affidavit of probable cause in support of the warrant are attached as Defendant's Exhibit A. The affidavit explains the events described above, and claimed that there was probable cause to believe that the images of suspected child pornography found on the Yahoo! site would also be found on the computer hard drive. The affidavit supported this claim by stating that graphic image files containing child pornography can be maintain for log periods of

time on computer hard drives or computer disks, CD ROMs, or other electronic storage media.  The affidavit also explained that even if the files containing the suspected child pornography have been deleted, computer forensic experts can still often recover the deleted images.  Detective Lynn also stated that it was her expert opinion that people who use computers in their home retain their personal files and data even if they upgrade to new computers.  This is normally done, the affidavit claimed, by saving the data from the old computer onto computer disks, CD ROMs, zip drives or other electronic storage media.  Detective Lynn then stated that she was in possession of the alleged images of child pornography provided by Yahoo! and that Mr. Eberle had access to those photos through Yahoo! in August of 2003 before the account was deactivated.  The images of alleged child pornography appeared to have been taken by a web cam and that Mr. Eberle had a web cam with his computer, before it was taken by the House of Television.

A Pennsylvania District Justice issued the search warrant, and Mr. Eberle's rented computer was seized from the House of Television.  Detective Lynn performed a forensic examination on the hard drive of the computer using forensic software designed to find all images, including deleted images, located on a computer hard drive.  The examination revealed that **there was no child pornography on the hard drive.**  Detective Lynn also ran a specific search for one of the images of suspected child pornography provided by Yahoo!.  This is called a "hash" search.  A digital image is made up of a series of 0s and 1s.  All of the 0s and 1s that make up a particular digital image are referred to as the "hash."  If a forensic examiner has a digital image, and wants to determine if that image is located anywhere on a computer hard drive, even if the image has been deleted by the computer user, the examiner can use forensic software to search the entire hard drive for the "hash" of the known digital image.  Detective Lynn's hash search for the suspected image of child

4

pornography provided by Yahoo! revealed that the image **was not on the hard drive.** After Detective Lynn's search of the hard drive revealed no child pornography, her investigation into Mr. Eberle was closed.

On March 23, 2005, Detective Lynn was contacted by the Corry police concerning a report that a young woman, T.S., had been sexually assaulted by Mr. Eberle in either 2001 or 2002. The victim was interviewed at the Child Advocacy Center in Erie, Pennsylvania on March 24, 2005, and provided a video taped statement.[2] During the interview the victim explained that Alesha Eberle, Mr. Eberle's wife, is her half-sister, and that in late August or early September 2001 she stayed with Mr. Eberle and his wife for about a week in their apartment in the Airport Apartments complex in Corry, Pennsylvania. The victim stated that at some point during the week Mr. Eberle began touching her on her breasts and buttocks. The victim stated that one night she was sleeping on the couch and awoke to find Mr. Eberle touching her in her vagina area and that her pants had been unzipped and pulled down. The victim told Mr. Eberle to stop which Mr. Eberle did although he told the victim he wanted to have sex with her. The next day the victim told Mrs. Eberle about what had happened and Mrs. Eberle stated that Mr. Eberle had been commenting for a few weeks that he wanted to have sex with the victim.

Another night when the victim was sleeping on the couch (the exact time frame is not clear) the victim awoke to find her pants pulled down and Mr. Eberle with his mouth on her vagina. The victim pushed Mr. Eberle away and then went into the bathroom and took a shower. The following day, Mr. and Mrs. Eberle called the victim into their bedroom. Mr. and Mrs. Eberle instructed the

---

[2]What follows is the victim's statements about Mr. Eberle allegedly sexually assaulting her and taking photographs of her. Mr. Eberle denies any of this happened, but the Court must understand the government's evidence to rule on the motions contained herein.

victim to take her clothes off which the victim did, leaving her clothed only in her bra and panties. Mr. and Mrs. Eberle then took pictures of the victim with a web cam which was attached to the Eberle's computer which was located in the bedroom. The pictures were taken of the victim in her bra and panties and also naked. Mr. and Mrs. Eberle took numerous pictures of the victim with the web cam and showed them to the victim. The victim, naked, was then told to get on the bed. Mrs. Eberle briefly left the bedroom to get a video camera and then proceeded to video tape Mr. Eberle having sex with the victim.

On the last night the victim stayed at the Eberle's, the victim was laying on the floor in the living room watching television with Mr. and Mrs. Eberle's children. While Mr. Eberle was taking a shower, Mrs. Eberle laid down next to the victim on the floor in the living room where the victim was watching television. Mrs. Eberle began touching the victim's vagina. The victim told Mrs. Eberle to stop, which she did when Mr. Eberle got out of the shower.

The victim did not report this abuse to anyone for about four years. During those four years the victim did not have any contact with Mr. or Mrs. Eberle. In January 2005, the victim moved to Corry to live with her older sister. Upon moving to Corry, the victim became depressed. In March 2005, the victim was speaking with her mother on the telephone and the victim told her mother about the sexual assault that had occurred at Mr. and Mrs. Eberle's in 2001. The victim then told her mother that the victim could prove her allegations by calling Mrs. Eberle. The victim then made a three-way call to Mrs. Eberle, but the call went to Mrs. Eberle's voice mailbox. The victim left a message for Mrs. Eberle, stating that the victim needed to speak to Mrs. Eberle about what happened a few years ago. About fifteen minutes later, Mrs. Eberle called the victim. The victim told Mrs. Eberle to wait because the victim had another call coming in on her call waiting. After putting Mrs.

Eberle on hold, the victim called her mother and then got back on the line with Mrs. Eberle. The victim's mother was then able to listen to the victim's conversation with Mrs. Eberle without Mrs. Eberle knowing that the victim's mother was listening.

When the victim got back on the line with Mrs. Eberle, Mrs. Eberle asked the victim what she meant by needing to talk about things that happened several years ago. The victim then asked if Mrs. Eberle remembered when she (Mrs. Eberle) and George (Mr. Eberle) had been touching the victim. Mrs. Eberle responded yes that she remembered and the victim stated that she may be coming over to the Eberles' apartment the coming weekend. Mrs. Eberle asked the victim what they would do when she came over, and the victim said "what do you think we're going to do?" Mrs. Eberle was happy to hear this, and told the victim that she (the victim) should tell George. Mr. Eberle then got on the phone and the victim told Mr. Eberle that she would be coming over the next weekend. The victim then asked Mrs. Eberle if she remembered the video camera, and Mrs. Eberle stated that she did. The victim asked Mrs. Eberle if she still had the tape and Mrs. Eberle said that she did not. The victim asked what happened to the tape and Mrs. Eberle stated that it had been ruined. Mrs. Eberle then stated that she planned on taping it again when the victim came over.

Following the victim's taped interview at the Child Advocacy Center, Detective Lynn showed the victim the pictures Yahoo! had provided NCMEC in August 2004. The victim identified herself as the person in the pictures and that they were the pictures Mr. and Mrs. Eberle took of her before Mr. Eberle sexually assaulted her.

Based on the victim's statements, Detective Lynn and her partner filed a criminal complaint against Mr. and Mrs. Eberle charging them with a series of offenses from rape to endangering the welfare of a child. Detective Lynn also obtained a search warrant for Mr. and Mrs. Eberle's home.

A copy of that search warrant and the affidavit in support of the warrant are attached as Defendant's Exhibit B. The affidavit provided the details of the victim's statements about Mr. and Mrs. Eberle taking pictures of her in her bra and panties and naked with their web cam and that they showed those pictures to the victim. The affidavit then provided the details of Detective Lynn's investigation into the pictures Yahoo! provided to NCMEC and that those images were on Mr. Eberle's site on Yahoo!. The affidavit explained that those pictures were shown to the victim and that the victim identified the pictures as the pictures Mr. and Mrs. Eberle took of her right before Mr. Eberle had sex with her.

The affidavit then provided boilerplate language about how digital images stored on a computer hard drive can be maintained for long periods of time, how deleted images can be recovered during forensic examinations of hard drives, and that when people upgrade to new computers they usually save the data that is on their old computers and place that data on to their new computers. This is the exact same language contained in Detective Lynn's affidavit in support of Mr. Eberle's computer in Defendant's Exhibit A. The affidavit then contains a paragraph of boilerplate language concerning the habits of "[t]hose who have demonstrated an interest or preference in sexual activity with children or in sexually explicit visual images depicting children." The paragraph claims such individuals keep their images of child pornography "secreted, but readily at hand." The affidavit claims that images of child pornography possessed by such individuals are extremely important to them and are likely to remain in their possession for extensive periods of time and they are not likely to destroy the images.

The affidavit concluded with the statement that Detective Lynn "believes that the images of child pornography were saved by George Eberle and Alesha Eberle AKA Corbett for their viewing

pleasures. This officer avers that given the above information, a search warrant should be issued for the residence of George Eberle and Alesha Eberle AKA Corbett, for violating the Pennsylvania Crimes Code 6312(b) Sexual Abuse of Children Manufacturing Child Pornography (manufacturing child pornography)." Detective Lynn's affidavit **never explains that she had previously searched a computer rented by Mr. Eberle for eight months and had not found any images of child pornography including the images provided to law enforcement by Yahoo!.**

Not surprisingly, a search of the computer seized from Mr. and Mrs. Eberle pursuant to the March 2005 search warrant using forensic software failed to find any of the images from the Yahoo! account. The search did find approximately 73 thumbnail images that are arguably images of minors engaging in sexually explicit conduct.[3]

Thumbnails are very small digital images (about the size of a human thumbnail) that are used on web pages to increase the speed at which the web page can be opened by an internet user's browser. Large images take a long time to download. Accordingly, web pages use thumbnails so that the web page can be downloaded quickly. After the web page has been downloaded, the user can view the thumbnails. If they see an image they would like to see at full size, they can click their mouse on the thumbnail and a full size verison of the image is downloaded.

The computer seized from Mr. Eberle in March 2005 was running Microsoft Windows as its operating system. To increase the speed at which users can surf the internet, Windows automatically saves images that appear on web pages that are opened by Windows' internet browser Internet

---

[3]To date, the government has not identified the specific images found on the March 2005 computer that it is alleging are images of child pornography knowingly received and possessed by Mr. Eberle as charged in counts 3 and 4. The parties have discussed the issue, and the government has agreed to provide a list of the images it alleges support counts 3 and 4.

Explorer.  When a person surfing the internet using Internet Explorer opens a web page, all of the images on the web page will be automatically written onto the computer's hard drive in a folder called "temporary internet files."  There are other folders on Windows, such as internet history and other temporary files, where this same process occurs.  The operating system does the downloading automatically, without any input from the user.  As a result, if a user opens a web page that is larger than the computer screen but closes the web page without scrolling down to see the whole page (or the web page is opened in a size smaller than the screen and is not maximized), the operating system will save images to the hard drive that the user has never physically seen.

None of the thumbnail images of suspected child pornography on the March 2005 computer had been accessed after being placed on the hard drive.  What that means is that after the operating system automatically put the thumbnails on to the hard drive, no user went to the thumbnails saved on the hard drive and clicked on them to view the image at full size.  Furthermore, all but three of the images had been deleted.

## II. Motion to Suppress Evidence Found on the March 2005 Computer.

The affidavit in support of the search warrant authorizing the search of the March 2005 computer contained material omissions of fact and was not supported by probable cause.

The affidavit in support of the search warrant for the March 2005 computer (Defendant's Exhibit B) purported to establish probable cause to believe the computer contained child pornography by relying on the following chain of inferences: 1)  Mr. Eberle used a computer in August 2001 to take pictures of the victim therefore the images were on the hard drive of the August 2001 computer; 2) child pornographers never destroy their images of child pornography, or if they do delete images from their hard drive the images can still be recovered; 3)  if the child pornography

10

is an image file on a hard drive the child pornographer will transfer that image from computer to computer every time he gets a new computer; 4) Mr. Eberle is a child pornographer therefore the images of child pornography from August 2001 are on the hard drive of the computer he possessed in March 2005. There are two problems with this chain of inferences. First, Detective Lynn knew them to be false since she had searched a computer Mr. Eberle had used between August 2001 and March 2005 and not found the pictures allegedly taken in August 2001. Second, the information that supported the warrant was stale.

     A.     Detective Lynn's Material Omissions of Facts.

In <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), the Supreme Court established the following procedure for challenging a search warrant affidavit that is alleged to contain materially false statements:

> [W]here a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The Third Circuit has held that <u>Franks</u> also applies to cases where it is alleged that facts have been deliberately or recklessly omitted from a search warrant affidavit. <u>United States v. Frost</u>, 999 F.2d 737, 742-43 & n.2 (3rd Cir. 1993). The Third Circuit has held that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."

11

Wilson v. Russo, 212 F.3d 781, 783 (3rd Cir. 2000).  If a court finds that there have been facts recklessly  omitted from a search warrant application, the court must determine whether the omissions were material, or necessary to the finding of probable cause.  "To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."  Id. at 789.

When Detective Lynn wrote her affidavit in support of the search warrant for the March 2005 computer, she was trying to establish probable cause to believe that the images taken of the victim in 2001 were on the computer Mr. Eberle possessed in March 2005.  Furthermore, Detective Lynn knew, or should have known, that the computer Mr. Eberle possessed in March 2005 was not the computer he possessed in August 2001.  Through her investigation into the Yahoo! pictures in August 2004, she knew that the computer Mr. Eberle possessed from January 2004 through August 2004 had been rented from the House of Television.  Accordingly, Detective Lynn knew, at a minimum, that Mr. Eberle had changed computers at least twice since August 2001.  She failed to include this information in her affidavit in support of the search warrant.

To overcome the time hurdle and the change of computers, Detective Lynn stated in her affidavit that when people upgrade and get new computers they save the data from their old computer and load it onto their new computer.  Detective Lynn then stated that child pornographers keep their images of child pornography and do not destroy them.  From those two averments, people move their data from computer to computer when they get a new computer and child pornographers don't destroy their child pornography, Detective Lynn claimed in her affidavit that there was probable cause to believe Mr. Eberle still had the images of child pornography created over three and

a half years ago and that those images were on his computer. But Detective Lynn failed to include in her affidavit the fact that she had searched one of the computers possessed by Mr. Eberle between August 2001 and March 2005 and had not found the images of child pornography allegedly created in August 2001. Had this information been included in the affidavit, there would not have been probable cause to believe the images of child pornography created in August 2001 were on the March 2005 computer because the chain of child pornography, so to speak, had been broken.

The basis for issuing the search warrant for the August 2004 computer was Detective Lynn's claim, identical to the claim in the affidavit in support of the March 2005 search warrant, that the images from 2001 would be on the August 2004 computer because Mr. Eberle would have moved them from each computer he had possessed from August 2001 to each new computer he possessed up to and including the August 2004 computer. That claim was refuted, however, by the search of the August 2004 computer which revealed that the computer did not contain the images of child pornography from August 2001.

Any reasonable person would have known that a judge asked to issue the search warrant for the March 2005 computer would have wanted to know that the August 2004 computer did not contain the images of child pornography from August 2001. This information refuted Detective Lynn's conclusions that the August 2001 images would be on the hard drive of every computer possessed by Mr. Eberle from August 2001 on. Detective Lynn understood this and avoided the situation by failing to give the information to the judge. When the omission is added to the affidavit, it is clear that the affidavit did not establish probable cause to believe that the March 2005 computer contained the August 2001 images of child pornography.

Detective Lynn's failure to include in the warrant the fact that the search of the August 2004

13

computer failed to reveal **any** images of child pornography was also a material omission.  Detective Lynn's affidavit was based in large part on the claim that Mr. Eberle was a person who demonstrated an interest in sexual activity with children and that such people keep child pornography close at hand both for their own sexual gratification and to use to show children to lower their inhibitions.  The gist of the claim is that child pornographers possess child pornography and keep it, apparently, forever.  Whether this is true or not, which will be discussed some more *infra*, the fact that no child pornography was found on a computer used by Mr. Eberle for eight months established that Mr. Eberle did not collect child pornography and store it on his computer.  Thus, Detective Lynn's boilerplate assertions concerning "[t]hose who have demonstrated an interest or preference in sexual activity with children" did not apply to Mr. Eberle.  Detective Lynn hid this fact from the issuing magistrate so that she could use her boilerplate assertions to manufacture probable cause to search the March 2005 computer.

      B.      Even Without the Reckless Omission of Fact the Affidavit Does Not Establish Probable Cause.

The information used to establish probable cause for the search of the March 2005 computer was stale.  The only evidence presented in the affidavit to establish that Mr. Eberle's computer would contain child pornography was the fact that over three and a half years prior to the time the search warrant was issued, a different computer possessed by Mr. Eberle contained child pornography.  If the information supporting a search warrant is too old it is stale and probable cause may no longer exist.  United States v. Harvey, 2 F.3d 1318, 1322 (3rd Cir. 1993).  When determining if the information supporting a warrant is stale, a court must look not only at the age of the information but also the nature of the crime and the type of evidence sought.  Id.

The information supporting the issuance of the search warrant for the March 2005 computer

was over three and a half years old.  Under Detective Lynn's version of events, the photographs of the victim were taken sometime before September 2, 2001, when they were uploaded onto Mr. Eberle's Yahoo! account.  After that date, the only information Detective Lynn had about those images and Mr. Eberle's computers was that Mr. Eberle no longer had the computer that was used to take the images in August 2001, and the images were not on the computer Mr. Eberle used from January through August 2004.  Detective Lynn had no information that Mr. Eberle had ever possessed any other images of child pornography.  Indeed, Detective Lynn knew that the computer Mr. Eberle used from January through August 2004 did not contain any child pornography.  Accordingly, Detective Lynn had no reason to believe that the images taken of the victim in August 2001 were still in Mr. Eberle's possession in March 2005.

Detective Lynn's affidavit did contain statements that child pornographers keep their child pornography for a long time.  However, those statements were not supported by any information nor did the affidavit establish that Detective Lynn had any basis to make these statements.  Detective Lynn's affidavit does not state that she has any expertise concerning the behavior of child pornographers.  The affidavit states that Detective Lynn has "specialized training in the investigation of computer related criminal activity" and that she "uses computer systems and conduct [sic] computer-related investigations" but that does not make her an expert on the behavior of child pornographers.  While a judge may consider an expert's opinion in finding probable cause, United States v. Loy, 191 F.3d 360, 366 (3rd Cir. 1999), the opinion must be given by someone who is actually an expert in the area in which the opinion is given.

When dealing with search warrants that authorize searches for child pornography, the Third Circuit, along with the other circuit courts of appeals, has been somewhat lenient when it comes to

the age of the information supporting the warrant. Harvey, 2. F.3d at 1322-33. The Third Circuit has accepted the statements in affidavits by experts that child pornographers keep their child pornography for a long time. Id. That type of information is lacking in this case because Detective Lynn is not, and did not purport to be, an expert in the behavior of child pornographers.

Even in cases were the government has provided the testimony of experts to support a search warrant affidavit's claims that child pornographers keep their child pornography for a long time the Third Circuit has not upheld a three and a half year gap in time between the possession of child pornography and the issuance of a search warrant to search for that child pornography. The possession of child pornography at some point in time cannot result in probable cause to search for that child pornography existing into infinity. At some point even information about the possession of child pornography becomes stale. Where ever that point is, three and a half years passes it.

One more thing needs to be said about the expert testimony that child pornographers keep their child pornography forever. The Third Circuit has accepted this expert testimony on the presumption that "individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain." United States v. Zimmerman, 277 F.3d 426, 434 (3rd Cir. 2002). While this may have been true before the internet, the emergence of the internet has changed the child pornography landscape dramatically. Child pornography is now available in prolific proportions on the internet. The need to horde child pornography that was obtained only with great effort is gone. Accordingly, the finding that child pornographers in today's world keep any child pornography that comes into their possession forever because child pornography is difficult to obtain is no longer reasonable.

III. Motion to Sever the Trials of Counts One and Two from Counts Three and Four.

16

The joinder of offenses against a defendant is governed by Federal Rule of Criminal Procedure 8(a). Rule 8(a) states:

 **(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In this case, the joinder of counts one and two with counts three and four is proper because they are of the same or similar character.

Motions to sever counts of an indictment are governed by Rule 14 which states in relevant part:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

In United States v. Coleman, 22 F.3d 126, 134 (7th Cir. 1994), the Seventh Circuit discussed the interplay between Rule 8 joinder when joinder is based on the counts being the same or similar and Rule 14 severance motions. The court explained that it was proper to have a somewhat more relaxed standard for Rule 8 joinder in these circumstances provided that district courts implement Rule 14 to prevent any unfair prejudice which might result from the joinder of counts. Id. As Coleman deals directly with the issue presented to this Court and represents the current law in the Seventh Circuit on this issue, an extended quote is all that is necessary to frame the issue presented in this motion.

 The initial decision to join is made (and properly reviewed) without real insight into the actual mutual relevance of the individual offenses and their surrounding circumstances, which only crystallizes with the presentation of evidence at trial. An uncomplicated inquiry and review of initial joinder is the natural product of Rule 8, and of the practicalities of litigation, and makes sense so long as authority remains

for monitoring the continued appropriateness of a joint trial as proceedings go forward, further developments unfold and evidentiary and other sources of prejudice can be better observed and analyzed. Rule 14 provides such authority, and pursuant to it a flexible examination of the nature of the evidence and ties between the acts underlying the offenses charged seems most appropriate. . . .

Because Rule 8 does represent a strong preference, in language and policy, for broadly construing the propriety of joinder as an initial matter, see <u>Archer</u>, 843 F.2d at 1021, district courts must not shirk their duties under Rule 14. They should vigilantly monitor for developing unfairness and should not hesitate to order severance at any point after indictment if the risk of real prejudice grows too large to justify whatever efficiencies a joint trial does provide. We review Rule 14 severance decisions --which are most frequently denials--for abuse of discretion out of a recognition that the district court is peculiarly qualified to discharge this function, not to signal any general disapproval of severance when appropriate in the interest of justice. Indeed, when offenses are joined because of their "same or similar character," the risk of unnecessary unfairness infiltrating the joint trial is elevated. Unlike instances of joinder of offenses based on the same or closely connected acts or transactions, "[t]here is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence [and], when totally unrelated, similar offenses are joined, defendant faces a 'considerable risk' of prejudice." 8 Moore's Federal Practice ¶ 8.05[4] (citations omitted). In such cases, the district courts should be especially watchful for possible jury confusion, illegitimate cumulation of evidence or other sources of prejudice not worth the reduced efficiency gains of a joint trial.

<u>Coleman</u>, 22 F.3d at 134.

The observations made by the Seventh Circuit in <u>Coleman</u> squarely apply here. The offenses joined in this case are separated by over three and a half years. The bodies of evidence that support the two groups of charges are completely independent of one another. The evidence supporting counts one and two is the Yahoo! pictures and the testimony of the victim. The evidence supporting counts three and four are the images found on the hard drive of the March 2005 computer and the testimony of government and defense experts concerning where on the hard drive the images were found and the inferences to be drawn from that information. There is absolutely no evidentiary overlap.

The risk of prejudice is huge. The risk that the jury will consider the evidence in support of counts one and two as substantive evidence in support of counts three and four and visa versa can not be overstated. It is completely unreasonable to believe that a single jury hearing evidence on both sets of charges could prevent the evidence from each group of charges from seeping into its decision making on the other set of charges.

Although there is a considerable policy argument in favor of joint trials based primarily on "efficiency" and "conservation of judicial and prosecutorial resources," see United States v. Price, 13 F.3d 711, 717 (3d Cir. 1994), these policy considerations must always give way before the needs of a fundamentally fair trial. Moreover, in the present case, these considerations are very slight indeed. The **only** "conservation" of resources from a joint trial is the selection of two juries rather than one. Given the primacy and significance of a jury's decision in contested criminal cases under the Sixth Amendment, the "savings" (in efficiency or resources) of using one jury rather than two cannot be the determining factor in the exercise of discretion required by this motion.

Of course, if the Court suppress the evidence found during the illegal search of the March 2005 computer this motion to sever becomes moot as the government would have no evidence in support of counts three and four.

## IV. Motion to Sever the Trial of Defendants on Counts One and Two.

Counts one and two charge Mr. Eberle and Mrs. Eberle with conspiracy to violate the laws of the United States, manufacturing child pornography, and manufacturing child pornography. These charges are based on the victim's claims that the pictures from the Yahoo! account are the pictures of her taken by Mr. and Mrs. Eberle just prior to Mr. Eberle having sex with the victim. Part of the government's evidence against Mrs. Eberle on these charges will be the victim's and her mother's

19

testimony that Mrs. Eberle admitted that she and Mr. Eberle committed the crime. The admission allegedly took place during the telephone call between the victim and Ms. Eberle that occurred shortly after the victim reported the incident to her mother.

Mrs. Eberle's statements to the victim are admissible against Mrs. Eberle as admissions. Fed.R.Evid. 801(d)(2)(A). However, Mrs. Eberle's statements to the victim are not admissible against Mr. Eberle. Because the government will be offering Mrs. Eberle's out-of-court statements for the truth of the matter asserted, the statements are hearsay. Fed.R.Evid. 801(c). If Mr. and Mrs. Eberle are tried together on counts one and two, and the government is allowed to introduce Mrs. Eberle's confession against her, Mr. Eberle's right to confront the witnesses against him will be violated. <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620 (1968). In <u>Bruton</u>, the Supreme Court held that the admission of a non-testifying co-defendant's confession that implicated the defendant violated the defendant's Sixth Amendment right to confront the witnesses against him. The Supreme Court further found that a limiting instruction telling the jury it could not consider the co-defendant's confession against the defendant was insufficient to protect the defendant's confrontation rights. The court concluded that it was simply asking too much of jurors to hear a confession from a co-defendant that implicated the defendant but not consider the confession against the defendant.

In this case, Mrs. Eberle's confession implicates Mr. Eberle. Accordingly, if the government wishes to use Mrs. Eberle's confession to the victim as evidence against Mrs. Eberle, Mr. Eberle's trial on counts one and two must be severed from Mrs. Eberle's.

V. Motion to Sever the Trial of Defendants on Counts Three and Four.

Counts three and four charge both Mr. and Mrs. Eberle with receiving and possessing the

thumbnail images of child pornography found during the search of the March 2005 computer. Under Federal Rule of Criminal Procedure 14(a), the Court can sever Mr. and Mrs. Eberle's trial on counts three and four if a joint trial would be prejudicial to Mr. and Mrs. Eberle. "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993). The Supreme Court gave as an example of a situation that would call for a severance "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." Id.

In this case, the government has informed Mr. Eberle that at the trial on counts three and four it intends to introduce against Mrs. Eberle statements she has made during internet chats between herself and other individuals that display an interest on Mrs. Eberle's part in pornography and sex to support its claim that Mrs. Eberle knowingly received and possessed the images of child pornography found on the March 2005 computer. While these statements are admissible against Mrs. Eberle for the truth of the matters asserted therein as admissions, those statements are not admissible against Mr. Eberle for the truth of the matters asserted therein. Mr. Eberle will be severely prejudiced by the admission of this evidence. It will be impossible for the jury to not consider Mrs. Eberle's statements when assessing the evidence against Mr. Eberle. This is the exact situation hypothesized by the Supreme Court in Zafiro that would prevent a jury from making a reliable judgment about guilt or innocence. The jury's determination regarding Mr. Eberle's guilt or innocence on counts three and four will not be reliable if they hear evidence about Mrs. Eberle's

unique sexual interests.  The jury will face a huge temptation to convict Mr. Eberle based on evidence that is not admissible against him but was heard by the jury solely because of a joint trial.

WHEREFORE, the defendant, George L. Eberle, respectfully requests that this Honorable Court suppress the evidence seized during the search of his computer in March 2005, sever the trial of counts one and two from the trial of counts three and four, and sever his trial on all counts from that of Mrs. Eberle.


Respectfully submitted,


/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653