IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-26 E |
| ) | **HEARING REQUESTED** |
| GEORGE L. EBERLE ) | |

### DEFENDANT GEORGE EBERLE'S MOTION *IN LIMINE* TO EXCLUDE GOVERNMENT'S PROFFERED 404(b) EVIDENCE

AND NOW, comes the defendant, George L. Eberle, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files the within Motion *In Limine* to Exclude Government's Proffered 404(b) Evidence and in support thereof sets forth as follows:

The government has responded to Mr. Eberle's motion to sever counts one and two from counts three and four by arguing that the evidence from each set of charges is admissible in the trial of the other set of charges pursuant to Federal Rule of Evidence 404(b) to show motive, intent, and knowledge. Because the evidence concerning both sets of charges will be admissible as evidence to prove the other set of charges, the government argues, severance is unnecessary. The government is wrong.

Prior bad acts are not admissible to show a propensity to commit crime. For prior bad act evidence to be admissible under Rule 404(b), the government must show: (1) the evidence has a proper purpose under Rule 404(b); (2) the evidence is relevant under Rule 402; (3) the probative value of the evidence must outweigh its prejudicial effect under Rule 403; and (4) the district court must charge the jury to consider the evidence only for the limited purpose for which it was admitted. Becker v. Arco Chemical Co., 207 F.3d 176, 189 (3rd Cir. 2000). "[W]hen prior bad act evidence

is both relevant and admissible for a proper purpose, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." United States v. Morley, 199 F.3d 129, 133 (3rd Cir. 1999). Finally, "a proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence." Id.

Before the government can be allowed to introduce a prior bad act, the trial court must examine all the evidence in the case and decide whether the jury could reasonably find that the defendant committed the prior act by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501 (1988). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Id.

> I. **Using evidence of knowingly receiving and possessing child pornography in March 2005 to show motive, knowledge, and intent to manufacture child pornography in August 2001.**
>
> A. The government can not establish George Eberle knowingly received or possessed child pornography in March 2005.

The first problem with the government's 404(b) argument that the knowing receipt and possession of child pornography in March 2005 can show motive, knowledge, and intent to manufacture child pornography in August 2001 is that the government cannot establish, even by a preponderance of the evidence, that George Eberle knowingly received or possessed the images of child pornography found on the March 2005 computer and charged in counts three and four. Without this proof, the government cannot use the fact that thumbnail images of child pornography were found on the March 2005 computer to prove **George's** motive, intent, or knowledge in

allegedly manufacturing child pornography in August 2001.

As explained in some detail in George's omnibus pretrial motion, some images of child pornography were found on the computer seized from the Eberle's home in March 2005. The government has provided George with an expert report that lists 76 thumbnail images of child pornography as being on the hard drive of the March 2005 computer. Thumbnail images are very small digital images (about the size of a human thumbnail) that are used on web pages to increase the speed at which the web page can be opened by an internet user's browser. Large images take a long time to download. Accordingly, web pages use thumbnails so that the web page can be downloaded quickly. After the web page has been downloaded, the user can view the thumbnails. If they see an image they would like to see at full size, they can click their mouse on the thumbnail and a full size verison of the image is downloaded.

The computer seized from Mr. Eberle in March 2005 was running Microsoft Windows as its operating system. To increase the speed at which users can surf the internet, Windows automatically saves images that appear on web pages that are opened by Windows' internet browser Internet Explorer. When a person surfing the internet using Internet Explorer opens a web page, all of the images on the web page will be automatically written onto the computer's hard drive in a folder called "temporary internet files." There are other folders on Windows, such as internet history and other temporary files, where this same process occurs. The operating system does the downloading automatically, without any input from the user. As a result, if a user opens a web page that is larger than the computer screen but closes the web page without scrolling down to see the whole page (or the web page is opened in a size smaller than the screen and is not maximized), the operating system will save images to the hard drive that the user has never physically seen.

None of the thumbnail images of suspected child pornography on the March 2005 computer had been accessed after being placed on the hard drive. What that means is that after the operating system automatically put the thumbnails on to the hard drive, no user went to the thumbnails saved on the hard drive and clicked on them to view the image at full size. Furthermore, all but four of the images had been deleted. This deletion can be done automatically by the operating system. The operating system will only use so much disk space for the folders that contain the temporary internet files, internet history files, and the other folders that are used to automatically place images on the hard drive. Once the space allocated for these folders by the operating system becomes full, the operating system will automatically start deleting items from these folders to make space for new information. The four images that were not deleted were found in the temporary internet files.

Three of the thumbnails were placed onto the hard drive on March 18, 2005, between 5:27 and 5:32 a.m. Fifty-three images were placed on the hard drive on March 21, 2005. One image was placed on the hard drive at 4:37 a.m. and the remaining fifty-two images were placed on the hard drive between 7:50 a.m. and 8:20 a.m. Four of the images were placed on the hard drive on March 27, 2005, between 5:51 a.m. and 5:53 a.m. It is not known when the remaining sixteen images were placed on the hard drive. The forensic software program was able to carve these images, which had been deleted, from the hard drive, however, the forensic software program could not recover any information concerning when the images were "created," i.e. written onto the hard drive.

The seventy-two thumbnail images of child pornography that were deleted were not accessible without the use of forensic software designed to locate deleted files. When a user deletes a file, that file is not physically removed from the hard drive. Rather, by deleting the file the computer is told that the space on the hard drive used to store the deleted file is now available for

use. Unless and until the computer uses the space on the hard drive in which the deleted file is stored to store new information, writing over the deleted file, the deleted file is still present on the hard drive. The ordinary user of the computer cannot find the deleted file because the operating system has removed the information concerning where on the hard drive the file is stored from the master file list, which is basically the table of contents of the hard drive. But, a computer expert using forensic software can find the deleted files and see what is in those files. What all this means for our purposes is that unless the government can put George Eberle at the keyboard of the computer at the times those files were written on to the hard drive, George had no way of knowing that they existed on the hard drive. Even that is not entirely accurate in the sense that, as explained above, it is possible, and common, to access a web page that contains numerous thumbnail images that will not all fit on the computer screen at the same time. Because the operating system automatically writes all of those thumbnail images to the hard drive, whether they ever actually are visible on the computer screen or not, it is quit possible for thumbnail images to be on the hard drive even though they were never actually seen by the person using the computer at the time the thumbnails are put on the hard drive. So, even if the government could put George at the keyboard of the computer at the time the images were put on the hard drive, which it can't, it could not prove, even by a preponderance of the evidence, that George saw the thumbnails, let alone knowingly received them or possessed them.

      The four images that were in the temporary internet files, while accessible to the normal computer user if they knew that Windows created a folder called temporary internet files and if they then looked into the temporary internet files folder, were not present in any folder displayed by the operating system as containing saved files.

The sixteen images that have no creation date cannot be linked to George at all. The computer seized from the Eberles in March 2005 was a rented computer. Alesha Eberle rented the computer from Rentway in Corry, Pa. When a rented computer is returned to Rentway, the store runs a "restore" disk on the computer which restores the hard drive to the way it looked when it was first delivered from the manufacturer. This process deletes all the files that are on the computer when the restore disk is run, however those files still remain on the hard drive and can be recovered by forensic software. The computer seized from the Eberles on March 2005 had previously been rented to other people. Accordingly, without knowing when deleted images recovered from the hard drive of the computer by forensic software were originally written onto the hard drive, there is no way of knowing whether those images were placed onto the hard drive during the time period the Eberles rented the computer or were placed there by a previous user.

Not only can the government not prove that George Eberle was the person using the computer at the time the thumbnails of child pornography were written onto the hard drive, George will produce evidence at the hearing on this motion to show that a person other than George was using the computer on March 21 and 27, 2005, at the time the images of child pornography were written onto the hard drive. George will present expert testimony at the hearing on the motion to sever, and at trial, that a user with the Yahoo! screen name "beamer69er" was active on the Eberle's computer during the times on March 21 and 27, 2005, that the thumbnail images of child pornography were written onto the Eberle's computer. George's expert will explain that people can create profiles on Yahoo!. The user selects a screen name and a password. That user can then use that screen name and password to access various content on Yahoo!, set up email accounts with Yahoo!, and also set up other accounts with Yahoo!. George will also present evidence concerning the identity of

6

"beamer69er." At this point, suffice it to say that "beamer69er" is not George.

When the Court considers all of this evidence, is becomes readily apparent that the government can not produce sufficient evidence for the jury to find by a preponderance of the evidence that George knew the deleted thumbnail images of child pornography were on the March 2005 computer. Accordingly, the government can not overcome the first hurdle in establishing the admissibility of 404(b) evidence, that George committed the prior bad act.

>   B.  Receiving and Possessing child pornography in March 2005 does not show motive intent and knowledge for a crime committed in August 2001.

As previously discussed, "when prior bad act evidence is both relevant and admissible for a proper purpose, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." United States v. Morley, 199 F.3d 129, 133 (3rd Cir. 1999). While the Third Circuit and other courts have held that bad acts showing a sexual interest in children that occur **prior** to the commission of the alleged crime can show motive, knowledge and intent, that logic does not hold true when applied to bad acts which occurred three and a half years **after** the alleged crime. In Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3rd Cir. 1992), the Third Circuit found that the fact that the defendant had previously had sex with the victim's sister made it "at least marginally more likely" that when the defendant then had sex with the victim he did so intentionally given his **previous** experience with intercourse. The Seventh Circuit's opinion in United States v. Angle, 234 F.3d 326 (7th Cir. 2000) is of no help to the government. The relevant portions of the Angle opinion dealt with two distinct issues. First, the defendant challenged the district court's ruling that pursuant to Federal Rule of Evidence 413 and 414 his prior convictions for sodomy and

7

child molestation could be introduced into evidence during his trial on charges of attempted receipt of child pornography, possession of child pornography and attempted solicitation of a minor via the internet to engage in sexually prohibited activity. Id. at 341. Because the defendant had not raised the objections in the district court, the Seventh Circuit reviewed the claims for plain error. The Seventh Circuit did not resolve the issue of whether the convictions had been properly admitted under Rules 413 and 414 finding that "[e]ven if Angle were able to establish plain error from the court's admission of these two convictions, we are not inclined to correct the error because it did not seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. Rule 404(b) is not even discussed by the Seventh Circuit.

Second, the opinion dealt with the admission of evidence that the defendant had possessed child pornography nine days prior to the search of his home which revealed a video tape containing child pornography, which was the child pornography that supported the charged offense of possessing child pornography. Id. at 343. The Seventh Circuit found the possession of child pornography nine days prior to the possession of the charged child pornography to be inextricably intertwined with the charged offense and therefore the prior child pornography possession was not an "other crime" as defined by Rule 404(b). Id. at 343.

Unlike Pinney and Angle, the government is claiming in this case that George's receipt and possession of child pornography (which they can't prove) in March 2005 somehow establishes the motive for committing a crime that occurred three and a half years earlier and that George acted knowingly and intentionally when he committed the crime. This makes no sense. Even if one assumes that George did knowingly receive and possess child pornography in March 2005, and those actions show a sexual interest in children, that does not establish that three and a half years earlier,

in August 2001, George had a sexual interest in children. George's point is driven home by the jury instruction given with regard to Rule 404(b) evidence introduced to show knowledge or intent.

> Evidence that an act was done or that on offense was committed by Defendant _____ at some other time is not, of course, any evidence or proof whatever that, at another time, the defendant performed a similar act or committed a similar offense, including the offense charged in [*Count _____ of*] this indictment.
>
> Evidence of a similar act or offense may not be considered by the jury in determining whether Defendant _____ actually performed the physical acts charged in this indictment. Nor may such evidence be considered for any other purpose whatever, unless the jury first finds beyond a reasonable doubt from other evidence in the case, standing alone, that Defendant _____ physically did the act charged in [*Count ___ of*] this indictment.
>
> If the jury should find beyond a reasonable doubt from other evidence in the case that Defendant _____ did the act or acts alleged in the particular count under consideration, the jury may then consider evidence as to an alleged **earlier** act of a like nature in determining the state of mind or intent with which Defendant _____ actually did the act or acts charged in the particular count.
>
> The defendant is not on trial for any acts or crimes not alleged in the indictment. Nor may a defendant be convicted of the crime[s] charged even if you were to find that [he] [she] committed other crimes–even crimes similar to the one charged in this indictment.

O'Malley, Grenig, & Lee, Federal Jury Practice and Instruction, §17.08 (5th ed. 2000) (emphasis added).

In the end, the government can not articulate how George's receipt and possession of child pornography in March 2005 establishes his motive, intent, and knowledge in August 2001. Accordingly, the receipt and possession of child pornography in March 2005 is not admissible under Rule 404(b) in the trial of counts one and two to show motive, knowledge and intent.

    C.    The probative value of the receipt and possession of child pornography in March 2005 is substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Even if the Court finds that George's receipt and possession of child pornography in March 2005 is relevant and admissible with regard to the conspiracy and manufacturing child pornography offenses charged in counts one and two, the Court should not admit the receipt and possession of child pornography under Rule 404(b) as its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. For reasons previously discussed, George's receipt and possession of child pornography if relevant, is barely so. The government's evidence that George knowingly received and possessed the child pornography is minimal at best, and the receipt and possession occurred three and a half years after the crimes charged in counts one and two. The danger of unfair prejudice can not be overstated. Regardless of any limiting instruction given by the Court, the jury will be unable to avoid the impulse to consider the receipt and possession of child pornography as evidence showing a propensity on George's part to obtain child pornography.

**II.     Using the manufacturing of child pornography in August 2001 as evidence of motive, intent, and knowledge to receive and possess child pornography in March 2005.**

George can not dispute that case law establishes that manufacturing child pornography in August 2001 establishes a sexual interest in children on George's part which could be used to show motive, intent, and knowledge in receiving and possessing child pornography in March 2005. However, this Court must still consider whether the probative value of evidence relating to George's allegedly manufacturing child pornography in August 2001 is substantially outweighed by the danger of unfair prejudice. As has been explained above, the government's case against George on counts three and four, receiving and possessing child pornography in March 2005, is extremely weak. The weakness of the government's evidence exacerbates the danger of unfair prejudice should this Court admit evidence concerning the manufacturing of child pornography in August 2001. The weaker the

10

evidence on the charged offense, the higher the danger that the evidence concerning uncharged bad acts will unfairly prejudice the defendant.

The government can not prove that it was George who used the March 2005 computer to receive and possess the thumbnail images of child pornography. Indeed, the very fact that the government has charged both George and Alesha with knowingly receiving and possessing the child pornography is an indication that it doesn't know which one received or possessed the child pornography. Given the fact that all of the images of child pornography at issue are thumbnails that had been deleted and were not recoverable absent the use of forensic software, it is not possible to conclude that **both** George and Alesha knowingly received and possessed the thumbnails. If it was Alesha surfing the internet when these thumbnail images were automatically placed on the hard drive by the operating system and then deleted, there is no way George would know those images were on the hard drive. Furthermore, the evidence that "beamer69er" was the person using the computer on March 21 and 27, 2005, at the time the thumbnails of child pornography created on those dates were written on to the hard drive further shows the government's inability to prove George knowingly received and possessed the thumbnail images of child pornography found on the March 2005 computer.

The Court should find that George's alleged manufacturing of child pornography in August 2001 (counts one and two) is not admissible with regard to the charges of receiving and possessing child pornography (counts three and four) because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to George.

    **III.**    **Even if the Court finds that the manufacturing of child pornography (counts one and two) is admissible in the trial of the charges of receiving and possessing child pornography (counts three and four) and vice versa,**

### the trial on counts one and two should still be severed from the trial on counts three and four due to the danger of confusion of the issues.

If the Court allows the government to use the evidence of manufacturing child pornography (counts one and two) as evidence against George in the trial on the charges of receiving and possessing child pornography (counts three and four) and vice versa, separate trials are still needed to avoid confusion of the issues. The Court need only try to imagine crafting coherent jury instructions in a joint trial to realize that a joint trial will be mass confusion.

As in any case in which multiple charges are filed against a defendant, the Court would have to instruct the jurors that they must consider each count separately. That instruction would go something like this:

> A separate crime is alleged against each of the defendants in each count of the indictment. Each alleged offense, and any evidence pertaining to it, should be considered separately by the jury. The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that defendant or against any other defendant.
>
> You must give separate and individual consideration to each charge against each defendant.

O'Malley, supra, §12.13. This instruction will be impossible for the jury to understand or follow because they will have to consider whether George is guilty of each of counts one, two, three, and four, and are being told they have to consider the evidence pertaining to each count separately yet at the same time the jury will be instructed that the evidence which supports counts three and four (receiving and possessing child pornography) can be considered with respect to counts one and two (conspiracy to manufacture child pornography and manufacturing child pornography) to show motive, knowledge, and intent, and the evidence that supports counts one and two can be considered with respect to counts three and four to show motive, knowledge, and intent. Thus, the jurors will

be told both to consider the evidence with regard to each count separately and to consider the evidence of each count to help prove George's guilt of the other counts.

Because the admission of the conduct charged in counts one and two, if admitted under Rule 404(b) to show motive, knowledge, and intent with respect to counts three and four and the conduct charged in counts three and four, if admitted under Rule 404(b) to show motive, knowledge, and intent with respect to counts one and two, will be admitted for a limited purpose, the Court will have to give an instruction to the jury telling them about the limited purpose of the evidence. That instruction would go something like this:

> In certain instances evidence may be admitted only concerning a particular party or only for a particular purpose and not generally against all parties or for all purposes.
>
> For example, evidence that George Eberle received and possessed child pornography in March 2005 has been admitted with respect to the charges of conspiracy to manufacture child pornography and manufacturing child pornography, but you may consider that evidence with respect to the charges of conspiracy to manufacture child pornography and manufacturing child pornography only in determining whether George Eberle had a motive to commit the crimes of conspiracy to manufacture child pornography and manufacturing child pornography or his state of mind when he engaged in that conduct. You may not, however, use this evidence of George Eberle's receipt and possession of child pornography in March 2005 in deciding whether or not the government has proven George Eberle's guilt for the crimes of conspiracy to manufacture child pornography and manufacturing child pornography. Furthermore, evidence that George Eberle conspired to manufacture child pornography and manufactured child pornography in August 2001 has been admitted with respect to the charges of knowingly receiving and possessing child pornography in March 2005, but you may consider that evidence with respect to the charges of knowingly receiving and possessing child pornography only in determining whether George Eberle had a motive to knowingly receive and possess child pornography or his state of mind when he engaged in that conduct. You may not, however, use the evidence of George Eberle's conspiring to manufacture child pornography and manufacturing of child pornography in deciding whether or not the government has proven George Eberle's guilt for the crimes of knowingly receiving and possessing child pornography in March 2005.

> For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.

O'Malley, supra, § 11.09 (modified to fit the facts of this case). This instruction is nearly incomprehensible but is the natural consequence of admitting evidence which supports the offenses charged in counts one and two as 404(b) evidence in support of the offenses charged in counts three and four and admitting evidence which supports the offenses charged in counts three and four as 404(b) evidence in support of the offenses charged in counts one and two. Under these circumstances, the evidence which supports counts one and two is being admitted for two purposes: 1) as substantive evidence in support of counts one and two with no limits on how the jury can consider the evidence; and 2) for limited purposes under 404(b) in support of counts three and four with strict limits on how the jury can use the evidence for those purposes. Likewise, the evidence in support of counts three and four is also admitted for two purposes: 1) as substantive evidence in support of counts three and four, with no limits on how the jury can consider the evidence; and 2) for limited purposes under 404(b) in support of counts one and two with strict limits on how the jury can use the evidence for those purposes.

Trying counts one and two with counts three and four is a recipe for disaster. The jury, and most likely this Court and counsel, will be completely confused as to what evidence they can consider for what purpose. Even if the Court is going to allow the government to use the evidence in counts one and two as 404(b) evidence in the trial of counts three and four and vice versa, there must be separate trials for counts one and two and counts three and four.

### IV. Evidence of the alleged rape must be excluded as irrelevant and unfairly prejudicial.

George has filed a motion to strike the language concerning the alleged rape from the indictment as surplusage. That motion explains why the rape is not part of the offense. In the government's response to George's motion to strike surplusage it argues that "the sexual assault of T.S. is part of the Eberles' entire scheme to manufacture child pornography." Gov. Response p. 35. For reasons explained in the original motion, the rape cannot be part of the conspiracy to violate Title 18 U.S.C. § 2251(a) as neither the rape nor the video taping of the rape violates § 2251(a). So, the rape allegation is not part of the offense. The government's response also argues that the alleged rape and video taping "demonstrate the Eberles' intent to manufacture child pornography" and are therefore relevant to the indictment. Id. at 36. This amounts to an argument that the rape is admissible as 404(b) evidence of intent. But that argument fails because the only way the rape shows intent to manufacture child pornography is if the jury believes the Eberles have a propensity to manufacture child pornography.

Even if the Court believes the rape can be used to show intent to manufacture child pornography, the rape must be excluded as being unfairly prejudicial. As serious as the crime of manufacturing child pornography is, the crime of raping a twelve-year-old is exponentially worse. It will not be possible for jurors to hear about the rape and its video taping and not consider that evidence as showing a propensity to manufacture child pornography. While it is presumed that jurors follow the jury instructions, common sense and intellectual honesty compel the conclusion that any limiting instruction on the use of the rape evidence could not overcome the irresistible impulse to conclude that if the Eberles video taped the rape, they manufactured the child

pornography as charged in count two.

WHEREFORE, the defendant, George L. Eberle, respectfully requests that this Honorable Court enter an order prohibiting the government from using evidence in support of counts one and two as 404(b) evidence in support of counts three and four and from using evidence in support of counts three and four as 404(b) evidence in support of counts one and two and prohibit the government from introducing any evidence concerning the alleged rape of the victim.

                                         Respectfully submitted,

                                         /s/ Thomas W. Patton
                                         Thomas W. Patton
                                         Assistant Federal Public Defender
                                         PA I.D. No. 88653