1                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2
UNITED STATES OF          :
3   AMERICA               :
                          :
4           v.            : CA 05-26 Erie
                          :
5   GEORGE EBERLE,        :
        Defendant         :
6

7

8

9           Detention Hearing before The Honorable

10     Susan Paradise Baxter, on June 28, 2005, commencing

11     at 2:48 p.m., Federal Courthouse, 17 South Park Row,

12     Erie, PA 16501.

13

14

15   For the Plaintiff:

16       Christian Trabold, Esquire
         U.S. Attorney's Office
17       Federal Courthouse
         17 South Park Row
18       Erie, PA 16501

19

20   For the Defendant:

21       Thomas W. Patton, Esquire
         Assistant Federal Public Defender
22       1111 Renaissance Centre
         1001 State Street
23       Erie, PA 16501

24

25               Reported by Sonya Hoffman
             Ferguson & Holdnack Reporting, Inc.

1                            I N D E X

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          MS. WALLEN:  The next case before the Court is United

2    States of America versus George L. Eberle.  It's docketed at

3    Criminal No. 05-26 Erie.  Representing the Government is

4    Christian Trabold.  Representing the Defendant is Thomas

5    Patton.

6          THE COURT:  Mr. Eberle this is a hearing on the

7    Government's motion to keep you in jail before your trial.

8    They have the burden, so they go first.  Mr. Trabold.

9          MR. TRABOLD:  Well, Your Honor, I'll proceed with Mr.

10   Eberle's case in the same fashion I proceeded in

11   Mrs. Eberle's case by way of proffer.  This is a presumption

12   case in light of the fact that the Eberles are charged with

13   2151 offense, as well as conspiracy to commit that offense,

14   as well as possession and receipt of child pornography

15   occurring in or around March of 2005.

16         THE COURT:  2251.

17         MR. TRABOLD:  2251, I apologize.

18         Given the nature and the circumstances of the crime

19   charged, that obviously is the first characteristic and a

20   factor that the Court's required to take into account in

21   this case in deciding separate and apart from the

22   presumption whether there are conditions that can be

23   fashioned, conditions to assure the Court that Mr. Eberle is

24   not a danger to the community or is not a flight risk.

25         In this case, obviously, the nature and the

1  circumstances of the crime charged are extremely significant

2  and represent a clear and present danger to the community,

3  so much so that in the limited class of crimes that give

4  rise to the presumption, this case is one of those limited

5  class of charges.

6      With regard to the weight of the evidence, the child

7  pornography that makes up the charges, Count No. 3 and 4 of

8  the indictment, was found on the Eberle's computer.  It was

9  found under circumstances when the Government knows the

10  Eberles have been accessing the computer inside their

11  residence.

12      With regard to the charges in Count Nos. 1 and 2, the

13  victim has come forward and indicated that she is the minor

14  depicted in the images that were found located at George

15  Eberle's Yahoo e-mail address.  Mr. Eberle, when questioned,

16  admitted that the images complained of by Yahoo and

17  ultimately reported by the National Center for Missing and

18  Exploited Children, those imagines were, in fact, on his

19  computer, or more specifically could be located at his Yahoo

20  e-mail account.  However, he denies that they were images of

21  the victim and he indicated that they were images of an

22  18-year-old by the name of Bree.

23      Additionally, Your Honor, during the course of a phone

24  conversation, the victim's mother in this case, overheard

25  Alesha Eberle discussing that she wanted -- she and George

 1    wanted to make another video of the victim similar to the

 2    video that they made of the victim that forms the -- partly

 3    forms the basis at Count No. 1 of the indictment because the

 4    earlier video that they had made had been destroyed.

 5        With regard to the history and characteristics of the

 6    Defendant, I went through a very lengthy list of things from

 7    an OCY Court summary report dated in November of 2004.  And

 8    again, some of these instances go back and forth between

 9    Alesha and George.  And to the extent that any of these

10    things relate to Alesha, they don't have really any bearing

11    on George, but I'll include them all.

12        At the time the report was dated, the Eberle's children

13    were in OCY placement.  The report indicates that Maverick

14    and Arthur, their two youngest children, the hygiene for

15    those children was not being consistently maintained.  The

16    report indicates that the medications for Maverick Eberle

17    for asthma were not consistently maintained.

18        Arthur Eberle displayed consistent behavioral problems.

19    And I believe according to the OCY summary, Arthur Eberle

20    would be the child that at the time covered by the report

21    was living with George Eberle.  Arthur Eberle displayed

22    consistent behavioral problems inside and outside of school.

23    And at the time, he was in kindergarten and his needs with

24    respect to his hyperactivity problems were not properly

25    addressed.

1          The Eberles, both Alesha and George, were referred to

2     the agency in December of 2004 due to a multiplicity of

3     various concerns, including domestic violence, lack of

4     parenting skills, and George and Alesha's mental health

5     concerns, which are significant and which are related in the

6     Pretrial Services' report as well.

7          Additionally, the report indicates that at the time the

8     Eberles had difficulty finding and maintaining appropriate

9     housing.  Specifically, with regard to domestic violence,

10    the OCY report indicates that in the two years prior -- or

11    covered prior to November of 2004, the Eberles had the Corry

12    Police at their residence 67 times for reports of domestic

13    violence.  And in almost every one of those 67 times, at

14    least some of the children were present and witnessed the

15    alleged acts of domestic violence.

16         And what's the date of time when this occurred?

17         The two years prior to the report.  The report

18    indicates that -- uses the phrase "over the past two years",

19    so that would be the two years prior to November of 2004.

20         With regard to Mr. Eberle's, George Eberle's, mental

21    health status, the report indicates -- and really, I think,

22    it's consistent with what's in the Pretrial Services report

23    that he suffers from bipolar disorder, anxiety disorder,

24    adult ADHD, and some depression-type illness.

25         The report further characterizes, they were -- as part

1  of their involvement with OCY, the Eberles were ordered to

2  attend Corry Counseling Services and comply with the

3  requirements obviously placed upon them as part of their

4  aftercare.  The report characterizes their participation

5  with Corry Counseling Services as inconsistent and sporadic.

6       Further, the report indicates that the Eberle's failed

7  to comply with the recommendations of the agency with regard

8  to their family service plan, which was one of the

9  components of their involvement with OCY.  Arthur Eberle,

10  who at the time was in kindergarten and, I believe, six

11  years of age for the time period covered by the report, the

12  report indicates that he missed the last two and a half

13  months of kindergarten, which, I guess, would have been the

14  school year covering 2003 and 2004.  And as a result of

15  that, he had to repeat kindergarten.

16       Perhaps most significantly in the OCY report, the

17  report indicates under the safety assessment section that

18  the caseworkers believed that the children would not be safe

19  if they returned to the home at that time, which, again,

20  would have been November of 2004.

21       Additionally, there's information from the foster

22  mother, who at that time Arthur Eberle was living with, who

23  indicated to OCY her belief, the foster mother's belief,

24  that Arthur Eberle was too educated with regard to things of

25  a sexual nature.  That Arthur Eberle discussed the sexual

1  behaviors of his parents, that Arthur Eberle would openly

2  masturbate saying that his father taught him the right way

3  to do it, that the child indicated that George Eberle

4  would -- had on occasion masturbated in front of the child.

5    Additionally, the child discusses viewing pornographic

6  material.  Openly discusses that and does not recognize,

7  according to the foster mother, that this material is for

8  adults.

9    That would all, Your Honor, be under the subheading of

10 the history and characteristics of this Defendant.  It also

11 leads into the nature and seriousness of the danger that Mr.

12 Eberle is to anyone in the community by virtue of the fact

13 that the OCY summary is relevant to your consideration here

14 because it indicates a pattern of inability to abide by

15 requirements placed upon Mr. Eberle by those folks that are

16 placing the requirements upon him.

17   And for all those reasons, including the reason in the

18 Pretrial Services' report -- and I would just note for the

19 record -- it's already part of the record, but the Pretrial

20 Services' report recommends, for a variety of reasons, that

21 Mr. Eberle be detained.  And the Government would concur

22 with that recommendation and ask that you detain Mr. Eberle

23 based on the proffer -- with regard to the charges, the

24 proffer, with regard to the weight of the evidence against

25 Mr. Eberle.

```
 1        And again, Your Honor, I don't know if I mentioned it,

 2   Mr. Eberle still has pending charges in the Court of Common

 3   Pleas of Erie County relating to the sexual assault-type

 4   offenses on the victim, who at the time was 12.   Those

 5   offenses are not going to be withdrawn by the Erie County

 6   DA's office.   And the only offenses that are here are the

 7   child pornography type related of offenses.   And those

 8   offenses, the child pornography-related offenses, will be

 9   withdrawn by the Erie County DA's office.   So essentially,

10   the case is going to be split in half.   Thank you.

11        THE COURT:  Mr. Patton.

12        MR. PATTON:  Your Honor, Mr. Eberle's mother is on her

13   way.   I just got a note handed to me and she is roughly 15

14   minutes away.   I will proceed with a proffer.

15        Basically, the information that's in the Pretrial

16   Services' report as indicated, officers from Pretrial

17   Services were able to interview Mr. Eberle's mother and

18   found her to be a suitable third-party custodial candidate.

19        There were some other concerns that led them to make

20   their recommendation as to detention, but their

21   investigation found Mr. Eberle's mother to be -- whose name

22   is Bev Nichols, N-I-C-H-O-L-S, to be an appropriate

23   third-party custodian.

24        So we will proceed with that as being our proffer as to

25   conditions.   And on top of that we'd have argument as well.
```

1      Do you have any knowledge of the stability of the phone

2  line?

3      Yes.  She is working on getting a phone line.  And we

4  understand that until she gets a working phone in her house,

5  that would impact whether or not she is an acceptable --

6  well, she's certainly an acceptable third-party custodian,

7  but as to whether or not Pretrial Services or this Court

8  would be comfortable in allowing Mr. Eberle to go to the

9  house.

10      So our position on that would be that you can make a

11  finding that he be released into her custody, but on the

12  condition that that not occur until a phone is operable in

13  the house -- a land-line phone operable, so that electronic

14  monitoring can be performed over the phone line.

15      THE COURT:  Okay.  Is that it?

16      MR. PATTON:  Yes.  As far as argument, I would like to

17  address the proffer offered by the Government today and

18  discuss the conditions that are set forth in the Bail Reform

19  Act that you have to consider.

20      THE COURT:  Okay.

21      MR. PATTON:  Your Honor, as far as the nature and

22  circumstances of the offenses charged, the offenses are of a

23  sexual nature dealing with children, but as far as the

24  weight of the evidence, you know very little about the

25  weight of the evidence.  And as far as the conspiracy charge

1    and the charge that I basically refer to as manufacturing

2    child pornography, the alleged videotaping of, or taking

3    pictures of intercourse, apparently is based on the

4    statements of a victim who waited some three to four years

5    before making any claims that she was somehow abused.

6        The offenses in Count No. 1 and 2 that deal with the

7    12-year-old alleged victim are alleged to have occurred from

8    August of 2001 until and around September 2001.  Now, we

9    don't have any information about the exact dates when this

10   victim supposedly came forward, but obviously this didn't --

11   she didn't come forward in 2001 or these charges would have

12   happened then.

13       So there is reason to question the weight of the

14   evidence here.  We don't know, you know, that somebody is

15   what they're represented in pictures that were found on a

16   Yahoo site.  You don't know whether or not on the pictures

17   themselves what portion of the people involved are visible

18   so that -- you know, whether or not faces are even visible

19   or not.  And you don't know about any type of further

20   investigation regarding any steps the police may have taken

21   to try and confirm the victim's claim that she is the

22   individual represented in these images.

23       Now, based on the indictment, you can find that there's

24   probable cause to believe that these events occurred, but

25   that is separate from your deciding what is the weight of

1    evidence against Mr. Eberle.  And Mr. Eberle has given

2    statements to the police specifically denying that the

3    alleged victim is the person depicted in those images.

4        There is a proffer that the victim's mother, at some

5    point in time, although we don't know when, overheard -- or

6    claimed to overhear part of a telephone conversation between

7    the victim and Alesha Eberle.  We don't know what end of the

8    conversation that mother was listening -- supposed to be

9    listening in on, whether it was the victim's end or on

10   Alesha's end.

11       And if she was listening on the victim's end, how she

12   would be in a position to hear what Alesha Eberle was

13   supposedly saying on the telephone.  And so you just don't

14   have any evidence -- any details whatsoever to explain how

15   the victim's mother was supposedly able to hear statements

16   made by Alesha Eberle over the telephone.  And if she was

17   told this by the victim after the phone call, you're now

18   dealing with two layers of hearsay.

19       And so I would submit that the very, very limited

20   information you have about this statement from the mother

21   does not add much to the weight of the evidence in this case

22   with regard to Counts 1 and 2.

23       With regard to Counts 3 and 4, the Government says,

24   well, we know that images of child pornography allegedly

25   found on the computer were put there at a time when the

1  Eberles, plural, had access to the computer.  Obviously, if

2  two people have access to the same computer, one of the

3  individuals could be using the computer in an improper

4  manner to do improper things without the other individual

5  knowing about it.

6      And so the Government has presented very, very scant

7  evidence to you to establish that George Eberle knowingly

8  received or possessed the images of child pornography that

9  were allegedly found on the computer that was seized from he

10  and his wife's home because even under the Government's

11  version, both of them had access to the computer.

12      But I thought that he agreed that the images were on

13  his computer, he knew about them, but that he said they were

14  of an 18-year-old person.

15      That deals with the allegations of Count 1 and 2.

16  These are separate events, Your Honor.  The images that form

17  the basis of Counts 1 and 2 were discovered -- were brought

18  to law enforcement's attention by Yahoo because they were

19  being stored on Yahoo's site, and those were posted up there

20  sometime in 2001 and 2002.  But if you look at the dates

21  charged in Counts 3 and 4, the days are in March 2005.

22      And the conduct, as I understand it, and Mr. Trabold

23  can correct me if I'm wrong, is that the images that

24  support -- or purport to support the charges in Counts 3 and

25  4 are images that were found on a computer that was taken

1    from the Eberle home in and around March of 2005, a computer

2    that had been rented from RentWay.

3        And so inasmuch as Mr. Trabold stated in his proffer

4    that those images, the ones at issue in Counts 3 and 4, the

5    Government says based on, I assume, an examination of the

6    hard drive, that those images were placed on the hard drive

7    of the computer during a time when both George and Alesha

8    Eberle had access to the computer in their home.

9        And that being the case, there is -- while there may be

10   enough for a finding of probable cause as to George Eberle's

11   supposedly possessing those alleged images of child

12   pornography, the evidence that he was the person, that he

13   even knew they were there, is very, very weak because the

14   Government, itself, has told you in its proffer that Alesha

15   Eberle had access to the computer at the same time.

16       Okay.

17       So I would submit that the weight of the evidence in

18   this case on all four counts is not high.

19       With regards to the history and characteristics of the

20   person, I do not find in Section 3142 (g)(3) any statement

21   that the history and characteristics include the person's

22   parenting ability.  OCY findings regarding whether or not

23   George Eberle has been a good parent to his children are

24   not -- don't impact whether or not he is a danger to the

25   community.

1          The fact that their hygiene may not have been good, the
2    fact that the one son may not have been getting his asthma
3    medication, the fact that the police were called to the
4    house numerous times for domestic violence, you can only
5    find a -- detain someone based on danger to the community if
6    you find that there's a danger that they will commit the
7    type of offense that would justify detention under the Bail
8    Reform Act and domestic abuse type of charges don't fall
9    into that category.

10          And in this case, Alesha Eberle has been ordered
11    detained.  So she -- Mr. Eberle, if he's released on bond,
12    is not going to have direct contact with her.  And under
13    the -- if Mr. Eberle is released on the condition that he
14    stay with his mother at her house in Corry, he is not going
15    to have any contact with Alesha, therefore, any concerns
16    that he is somehow a danger to her are alleviated.  Any
17    concern that he is a danger to his children are alleviated
18    because OCY has custody of the children and he cannot have
19    contact with the children.

20          And therefore, the evidence concerning the OCY report,
21    you know, while it may be relevant to a determination in
22    Family Court as to whether or not the children should be
23    kept in foster care and whether or not Mr. Eberle's parental
24    rights may be looked at being terminated, they're not
25    particularly relevant here.

1        To the extent the Government wants to argue that the

2    compliance with OYC's family plan is some kind of an

3    indication to you as to how Mr. Eberle may comply with your

4    conditions here, I would submit that that is a poor analogy

5    that does not follow through or make sense when you

6    understand that OCY cannot -- has no authority to force

7    anyone to do anything.

8        OCY may be able to say, look, if you want your children

9    back, here's some things you need to do.  And then a Judge

10   may look to see if there's been a follow up on the OCY plan

11   to make determinations about whether or not the Judge is

12   going to return children to the parents.  But the OCY Family

13   Plan and recommendations do not carry the weight of law and

14   do not carry the weight of a court behind them, and not

15   following those conditions cannot result in someone being

16   arrested or placed in jail.

17       It's going to impact on whether or not they're going to

18   be reunited with their children, but it certainly is not

19   indicative of how someone who was placed on bond under

20   conditions is going to act under those conditions of bond

21   because they are apples and oranges.

22       Mr. Eberle's personal character and his physical and

23   mental condition; now his mental condition, there's

24   indications that he had been diagnosed with some mental

25   illnesses, but there is also an indication that he was

1   receiving treatment for those illnesses and was on

2   medication.  And the Government -- neither the Government

3   nor the Pretrial Services' office has in any way said to you

4   or explained to you how these mental illnesses specifically

5   lead to a finding that somehow Mr. Eberle is a danger to the

6   community.

7        These are mental illnesses that millions of people deal

8   with on a day-to-day basis through medications and mental

9   health treatment.  And to say that someone who is bipolar is

10  a danger to the community is quite frankly just a gross

11  oversimplification and generalization.  Under that standard,

12  anyone who would come into this Court with some kind of

13  mental health diagnosis under the DSM4 ought be detained

14  because somehow that makes them a danger.

15       THE COURT:  I think the concern here is how treatment

16  and travel to the Court is going to be had when his mother

17  didn't have the ability to access a car.

18       MR. PATTON:  Well, if that's the issue, that's fine,

19  and we can address that.  If the issue from the Government's

20  perspective is he's a danger because he has mental illness,

21  I think that's a different situation.

22       THE COURT:  I hadn't heard that.  All I heard about was

23  what's in the Pretrial Services' report.  And in that

24  report, it just focuses on the fact that it's of concern if

25  not treated.

1      Okay.  There's -- I would submit there is not any

2  evidence to support a finding that Mr. Eberle would not

3  receive -- continue to receive treatment or would not follow

4  through on any treatment recommended by Pretrial Services.

5  Mr. Eberle --

6      You're proffering that he will, in fact, continue to

7  receive treatment.

8      Yes.

9      Okay.

10      And I would submit, Your Honor, even if he would not

11  receive treatment, even if he would not take medications

12  that may be prescribed, that does not heed to the finding

13  that he is a danger.

14      It could.

15      It could if someone would present any evidence to you

16  that in Mr. Eberle's case that there are facts to support

17  such a finding, but no one has.  And there are people who

18  are mentally ill, that have mental illnesses such as

19  depression or bipolar disorder, who choose to not medicate

20  and choose to try to treat themselves through either

21  counseling or just through behavior modification.

22      And Mr. Eberle, obviously, has strong family ties to

23  this area.  His family is in Corry, his mother is there, and

24  he's welcome to be there.  And he's not employed and he has

25  no financial resources.  I'd say the financial resources

1    indicate the he certainly isn't a flight risk because he

2    doesn't have any money to go anywhere.

3         And as far as employment, I would suggest that if Your

4    Honor is going to release Mr. Eberle, that that release

5    would be to his mother's house with some type of home

6    confinement with electronic monitoring, which would make

7    employment kind of a moot point because he would not be able

8    to be employed if he was on house arrest with electronic

9    monitoring.

10        Can you answer the question about grandchildren or

11   other children who visit her.

12        Your Honor, I am not aware that there are any

13   grandchildren -- well, the grandchildren would be

14   Mr. Eberle's children.  But since they are in foster homes,

15   there isn't any contact.  And Your Honor can make it a

16   condition of the bond simply that no children or no one

17   under 18 be allowed to be in the home.  No one who's under

18   18 lives there.  And it could just simply be a straight-out

19   condition that no children under the age of 18 are allowed

20   to be there.

21        If Mrs. Eberle has other extended family that has

22   younger children that she wants to see, she would simply

23   have to go somewhere else to see them.  I think that would

24   be an appropriate condition of bond given the nature of the

25   charges.

1        Mr. Eberle was not on any type of supervision at the

2    time this offense occurred.  I have not seen any indication

3    that there's any history of failing to appear in court

4    proceedings.  And there really is no prior record at all, at

5    least not listed in the Pretrial Services' report.  And when

6    this case gets boiled down do its essence, it's Mr. Eberle

7    may present a danger to children.  And so -- but the

8    Government has not indicated that there's any other type of

9    danger Mr. Eberle presents to the community other than he

10   should not have contact with children.  And possibly they

11   could make an argument that he shouldn't have contact with

12   his wife based on the claims of domestic problems.

13       But those risks can be addressed through the conditions

14   of bond.  As we've already stated, he's not going to be able

15   to have contact with his wife because his wife is detained

16   under order of this Court and, therefore, he physically just

17   will not have any contact with her.  And Your Honor can

18   impose conditions such that Mr. Eberle will not have any

19   contact with children.  And you can also say that he not

20   have any access to a computer, or certainly a computer that

21   has any type of Internet access.

22       And with those conditions, any risk to the community is

23   addressed.  And I understand that the nature of these

24   charges are serious, and that there are offenses that if

25   they would be proven are viewed with particular scorn; but

1    the Bail Reform Act doesn't say, if you're charged with a

2    really nasty offense, you have to be detained.  What it says

3    is you have to consider the nature of the charges, but if

4    there are conditions of release that can address any

5    possible danger or any possibility of failing to appear, you

6    have to release under those conditions.

7         And in this case, there are clearly conditions that can

8    address the concerns that are raised by the nature of these

9    charges.

10        THE COURT:  Mr. Patton, your folks have arrived.  If

11   you'd like to take a few minutes before I let Mr. Trabold

12   argue, go ahead.

13             (Brief recess taken.)

14        MR. PATTON:  Thank you.  Your Honor, Ms. Nichols has no

15   grandchildren, other than George's children.  The only

16   contact she has had with George's children since he was

17   arrested was when Alesha was out on bond.  They were allowed

18   to have visitations at Child Advocacy -- supervised

19   visitations through OCY.  But since Alesha's incarceration,

20   there have been no visitations whatsoever.

21        THE COURT:  Does she work during the day?

22        MR. PATTON:  No, she does not.  She's on disability.

23   They have a phone -- they have arranged to have a phone put

24   in the house that -- it has been told by Verizon the home

25   phone will be activated on Friday.  We have the telephone

1  number that has been assigned to the home.

2      Right now it is set up so that there will be Internet

3  access when the phone is hooked up.  The phone is being

4  hooked up in the name of Charles Nichols, who is Bev

5  Nichols' brother.  He would have a computer in his room,

6  which is located in the basement of the house, which will

7  have a door on it.  And that will be locked by Charles

8  Nichols and only accessible to Charles Nicols.

9      THE COURT:  All right.

10     MR. PATTON:  And, of course, Mr. Eberle has not yet

11 been able to satisfy the bond that has been set in State

12 court, so obviously would not be physically released even if

13 he's placed on bond by this Court unless and until he was

14 able to post the bond in State court.

15     THE COURT:  Okay.  Thank you.  Mr. Trabold.

16     MR. TRABOLD:  Your Honor, I have some -- I don't know

17 what the Court's intentions were with regard to issuing a

18 ruling immediately upon the close of the hearing, but I have

19 some cases that I'd like you to consider and I'd like to

20 discuss the rulings in some of these cases.  Those cases are

21 two case in the 3rd Circuit, US versus Carbone and US versus

22 Perry.  And I cite to those and I will provide copies of the

23 cases to the Court just because they reveal the general

24 standard in these detention hearings with regard to a

25 presumption and with regard to what your consideration needs

1   to be.

2       It's simply that in a case where there's a presumption,

3   the Defendant's burden is one of production to come forward

4   with some evidence to rebut the presumption.  It is always

5   the Government's burden of proof of persuasion throughout.

6   However, if the Defendant does rebut the presumption, the

7   presumption is not removed entirely.  It still remains there

8   for you to consider along the lines of for you to consider

9   that congress -- consider that said offenses give rise to

10  the presumption to be so serious and that the presumption is

11  there and that that is something that you should consider.

12  And I will provide you those 3rd Circuit cases just because

13  they enunciate that standard.

14      I'm also providing you a case from the 2nd Circuit,

15  United States versus Miguel Mercedes, 254 Fed. Cir. 433 from

16  2001 and United States versus Abad, A-B-A-D, from the 8th

17  Circuit in 2003, that's at 350 Fed. Cir. 793.  In the

18  Mercedes case, counsel indicates that there's really scant

19  evidence that his client is a danger to the community -- and

20  both of these cases speak to the presumption, first of all,

21  and the danger to the community.

22      In the Mercedes case, the defendants were charged with

23  conspiracy to commit armed robbery.  The District Court

24  released the defendants on bail pending trial, the

25  Government appealed, and the 2nd Circuit reversed the

1    release order finding that the defendant had failed to rebut

2    the presumption of dangerousness and risk of flight.

3        And I am citing this case for a few reasons.  First

4    off, really what your consideration is in this case is

5    two-fold, has Mr. Eberle rebutted the presumption in favor

6    of detention.  If you find that he has not rebutted the

7    presumption if favor of detention, then there's really no

8    reason for you to go further and you should order that he be

9    detained.  If you find that he has rebutted the presumption,

10    then you're obligated under the Bail Reform Act to go

11    further and consider the four factors that counsel and I

12    have both addressed to you already.

13        And only if you find that a consideration of those

14    factors, while still considering that the presumption

15    exists, only if you find that a consideration of those four

16    factors calls for the Defendant's release, should you then

17    issue a release order.

18        In this case what you essentially have is a Defendant

19    not rebutting the presumption because Mr. Eberle has, quite

20    frankly, provided no evidence to rebut the presumption.

21    He's come forward and said that his mother is willing to be

22    his third-party custodian and that there are release

23    conditions that can be implemented in this case sufficient

24    to remove the presumption.

25        I would submit to you that based on the cases that I

 1   provided to you, that is not enough to rebut the

 2   presumption.  You have to come forward with some evidence

 3   about your personal background that rebuts the presumption.

 4   Release conditions in and of themselves cannot and should

 5   not be enough because otherwise if release conditions by

 6   themselves were enough, then there would be no need for a

 7   presumption.  The presumption would be rebutted in

 8   99.9 percent of cases because in almost every case there's a

 9   presumption -- or there are release conditions that can be

10   fashioned.  Therefore, if the release conditions in and of

11   themselves were enough to rebut the presumption, there would

12   be no reason to have a presumption because it would

13   continually and in every case be rebutted.

14        In the case the presumption is not rebutted because the

15   release conditions that are fashioned by Pretrial Services

16   in this case -- well, first of all, Pretrial Services does

17   not recommend release in this case.  So there is no

18   recommendation from Pretrial Services that Mr. Eberle be

19   released.  Secondly, any release conditions that you would

20   fashion would not be sufficient to ensure you that

21   Mr. Eberle would not be a danger to the community.

22        Specifically, in Mercedes, the Court held that's

23   expressly referenced in several cases where a bail package

24   might reasonably assure the appearance of the defendant at

25   trial, those -- that bail package will not reasonably assure

 1   the safety of the community.  And they reference a variety

 2   of different cases.

 3        One of the cases being a case where the defendant is

 4   charged with Rico-type violations, conspiracy to commit

 5   loansharking, illegal weapons possession, and similar-type

 6   offenses, the release conditions placed upon those

 7   defendants were not enough to ensure that the defendants

 8   would not be a danger to the community simply because of the

 9   nature of the charges against the defendant -- those

10   defendants and because the release conditions were simply

11   put into place to ensure that the defendant would appear for

12   trial, not to ensure that the defendant would not be a

13   danger to the community.

14        And in this case, if you were to fashion release

15   conditions along the lines of electronic monitoring and home

16   detention, first of all, Mr. Eberle would live in Corry,

17   which even if you were to assume that a Pretrial Services'

18   officer in Erie would respond to any violation, would take

19   along the lines of a half hour to 45 minutes to respond to

20   the allegation.  If it would be a Pretrial Services' officer

21   in Pittsburgh, what assurance do you have that -- and this

22   is no fault of Pretrial Services, but any violation of

23   electronic monitoring would not be responded to for a

24   lengthy period of time by Pretrial Services simply because

25   of the distance that would need to be covered.

1     Secondly, home detention or electronic monitoring would

2  not prevent Mr. Eberle from having contact with any child

3  that might come into his home.  And I haven't heard anything

4  that would indicate that the Eberles can guarantee that at

5  no point in time would Mr. Eberle ever have contact with

6  children.

7     Third, Mr. Eberle is going to be in a home with a

8  computer with Internet access.  And you're asked to not

9  detain him because the person who has the computer

10  apparently is offering assurances that the door to his room

11  will constantly be locked.  I would submit to you that you

12  just have not heard enough in this case to rebut the

13  presumption.  And the fact that your mother is willing to be

14  a third-party custodian does not rebut the presumption in a

15  case like this.  Otherwise, there would be no reason to have

16  a presumption.

17     Additionally, Your Honor, with regard to the Mercedes

18  case, the Court takes note of the fact that one of the

19  defendants in the Mercedes case references that he had no

20  crimes of violence in his past or he really had no prior

21  record which would cause the Court to consider him a danger

22  to the community.  And the Court explicitly finds that a

23  history of domestic violence is enough for the Court to

24  conclude that the defendant is a danger to the community.

25  And I related to the Court that the OCY Court Summary in

1    this case revealed that the Corry Police were called to

2    Mr. Eberle's residence 67 times for reports of domestic

3    violence.

4        And the Court in Mercedes specifically writes, "A

5    willingness to strike loved ones offers probative evidence

6    of the tendency to violence and dangerousness towards

7    others."  With regard to the other case from the 8th

8    Circuit, I cite to that primarily because it's a sexual

9    assault-type case involving a child victim.  And the Court

10   notes that, "Although the defendant had no prior criminal

11   history, the nature of the crime charged, which would be

12   sexual activity with a minor, weighs heavily against

13   release."

14       And in that case the Court found that even though the

15   defendant's parents were willing to put up $65,000 of an

16   equity interest in their home and do a number of other

17   things along the lines of home confinement and electronic

18   monitoring, as well as be third-party custodian, that the

19   release order in that case was reversed by the 8th Circuit.

20       So what you have in this case is essentially, Your

21   Honor, a situation where Mr. Eberle has provided no evidence

22   which rebuts the presumption.  And if you were to find that

23   the presumption was rebutted, what essentially that means is

24   that really there should be no presumption because even on

25   the barest of evidence you could rebut the presumption.

1    Having not rebutted the presumption, Mr. Eberle should be

2    detained, and he should be detained especially in light of

3    the charges against him.

4        Now, with regard to the Government, Counsel made

5    comment that the weight of the evidence based on my proffer

6    just is not there.  This is a case where a victim has come

7    forward.  A victim has said those pictures are of me, those

8    pictures were taken of me when I was 12.  Mr. Eberle admits

9    that those pictures, which the victim says are her, were on

10   his Yahoo e-mail.  Beyond that, pictures of child

11   pornography were found on the Eberle's computer.

12   Mr. Eberle, again, admits that the pictures of the 12 year

13   old, who came forward, were pictures that were on his

14   computer.

15       MR. PATTON:  He did not admit that they were pictures

16   of a 12 year old.

17       MR. TRABOLD:  I mean, Mr. Eberle admits that those

18   pictures that the victim says were of her are on his

19   computer.  He disputes that they were of her.

20       This is not a case where the evidence is weak, Your

21   Honor.  This is a case where the victim came forward,

22   albeit, three years later.  The pictures are what the

23   pictures are, they were on Mr. Eberle's computer.

24       What you're essentially being asked to do is to release

25   this Defendant on conditions when -- this is the picture

1    that you're left with of Mr. Eberle:  He has essentially no

2    work history, he has been unable to maintain a residence, he

3    has mental illness, he's unable to comply with the

4    requirements of OCY with regard to his children.  What is

5    there about the nature and circumstances of his background

6    that should cause you to release him to the community,

7    especially in light of the charges and in light of the

8    allegations and evidence against him?

9        I'm struggling to find something that you can pinpoint

10    in the record before you that should give you confidence to

11    release him.  Now, Counsel says that mental illness in and

12    of itself isn't enough for you to detain somebody.  Well, it

13    was enough for Pretrial Services to recommend that

14    Mr. Eberle -- to factor into the equation in recommending

15    for detention.  And that's in all you have before you in

16    this case.

17        Counsel also says, well, really the fact that he

18    couldn't comply with OCY is apples and oranges in this case

19    because OCY didn't have the authority to punish him.  Well,

20    I would ask you to consider, if you can't comply with

21    dictates placed upon you which are designed to benefit your

22    children and your relationship with your children, then what

23    confidence do you have that he's going to comply with what

24    you want him to do.  If you can't comply with dictates

25    placed upon you related to your children, which should be

 1    the most important thing in your life, then it's absolutely

 2    fanciful for Counsel to argue to you that all of a sudden

 3    even though Mr. Eberle couldn't comply under those, that all

 4    of a sudden now because you have the ability to punish, he's

 5    going to do what you tell him to do.

 6         There's nothing -- in short, Your Honor, there's

 7    nothing in this record that should give you any confidence

 8    that Mr. Eberle is not a danger to the community.  There's

 9    just nothing there.  He hasn't rebutted the presumption.

10    And it simply can't be enough to come into court and offer a

11    proffer that my mother will be the third-party custodian and

12    take care of me.  That just can't be enough, because if it

13    is, then there should be no presumption.

14         THE COURT:  Thank you.

15         MR. PATTON:  On the issue of rebutting the presumption,

16    I would that submit that Mr. Trabold is absolutely, legally

17    incorrect when he says that presenting evidence of the

18    conditions of bond that can be imposed cannot be used to

19    rebut the presumption.  That's just legally not true.  The

20    presumption is not intended to be a high burden to overcome

21    and it can be overcome based on the facts that are contained

22    in the Pretrial Services' report.  And that -- so it's just

23    incorrect that you cannot use that type of information to

24    rebut the presumption.

25         And to indicate the area in which -- in the Western

1    District of Pennsylvania in which you live should impact

2    whether or not you should be released on bond, I would just

3    submit it's just grossly inappropriate.  You're actually,

4    legally discriminating against someone based on the fact

5    that they live in Corry rather than living in Erie or living

6    in Pittsburgh.

7        MR. TRABOLD:  Well, Judge, you're not legally

8    discriminating against anybody.  The question you have is:

9    Is Mr. Eberle a danger to the community?  And where he lives

10   in the community is relevant to your consideration because

11   it's relevant to how long it will take for someone to

12   respond should he not do what he's supposed to do.

13       Mr. Eberle doesn't live two blocks away from the

14   Pretrial Services' office in Pittsburgh, that's just the

15   fact of the matter.  And it's not legal discrimination

16   against him for you to consider how long it's going to take

17   for a law enforcement officer to respond to any violation

18   that Mr. Eberle commits because Mr. Eberle is charged with

19   offenses against children.  Mr. Eberle -- therefore, you

20   should consider how long it's going to take for the

21   community to be protecting should Mr. Eberle walk away from

22   his electronic monitoring.

23       Beyond that, Your Honor, it is not incorrect to say

24   that the Defendant has to come forward with some evidence to

25   rebut the presumption and that release conditions in and of

1   themselves are not some evidence that Mr. Eberle's coming

2   forward with.  That's not -- coming forward with some

3   evidence that tells the Court, I'm not a danger to the

4   community because of my personal background, not because the

5   Court can place electronic monitoring on me, you can do that

6   in every case.

7        THE COURT:  I'm going to read these cases and I'm going

8   to look at proffers made by both sides.  And I will make my

9   decision before the end of the day.

10

11               (Hearing concluded at 3:33 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25